Good morning, Your Honors. My name is Stephen Eugster. I am the plaintiff in this action and my own attorney. Before we begin, the case is a case about standing. But in order to understand the standing issue, I'd like to make the court aware of what it is the plaintiff seeks to do in this action. The plaintiff has had, unfortunately, an experience with the Washington Bar Association disciplinary rules. That experience has led me to some conclusions about how the system works, how the system can be tested within the system. And in fact, it really cannot be tested from a constitutional standpoint within the system. Your only test is after you've gone through the process, you might file a petition for a writ of certiorari with the United States Supreme Court and the likelihood of getting a petition granted is probably less than almost nil. Mr. Eugster, let me just ask you this. I mean, based upon Canatella, I really don't see where you've got a cause of action here. You're not seeking to be reinstated, as I understand it. You're not seeking to undo anything that happened with the Washington State Bar. You're speaking prospectively only. That's correct, Your Honor. And in order to do that, in order to have standing, you've got to show a very significant possibility that you'd be wrong to get him through the same violation process. And yet, you're not a member of the Bar. How can this be? I am a member of the Bar. Oh, you are? OK. Yes. I have been reinstated, and I'm practicing law. OK, so. And you're right. Very clearly, the case is about the constitutionality of the Washington State Bar Association disciplinary process. And very simply put, it's my position that that process should be divested from the Bar Association. And it's not our position to talk policy here. We really just have to look at the legal points. And I guess my concern is, under Canatella, how can you show that there is a very significant possibility that you're going to be part of the same process all over again? I would assume you would try to avoid disciplinary processes again, in light of your delightful experience before. Most significantly, I try to avoid any grievance being filed against me. But. So let's assume for a minute that you're, I'm sure you are, a smart guy. You want to avoid this process. How then can you show a very significant possibility that you'd be wronged again through the same process? Well, quite honestly, Your Honor, the practice of law, for me, is constantly with a view to a possibility that somebody might file a grievance against me, and the Bar Association proceed under that grievance and put me under the auspices of the statutes. Is that a particularized concern, or one that every member of the Bar would confront equally? I can assure you, Your Honor, that I never considered being subjected to bar discipline prior to the time I was subjected to bar discipline. Your concern, as I understand it, is that there's this letter still on file, so that if someone else complains against you, that there will be disciplinary proceedings, and you might suffer real injury. That's correct. There are three points to my raw argument that I ask. I'm sorry, before you, in your brief, I mean, in your answer to the motion to dismiss, you say this action has nothing to do with an ongoing case, and it has nothing to do with a past case. Again, the issue in this case is whether the system complies with due process. That's exactly right, Your Honor. So I don't see that we can consider whatever happened to you in the past case. You can't. OK. You can't. But your concern is that if someone complains against you, the process will be unfair. The process will be unfair. So what you seek now is injunctive relief? Yes. Yes. Then don't you run into the ripeness issue under BOVA versus City of Medford, because it's based upon contingent future events that may or may not occur. Well, I wonder if I can just step back for a moment and try to answer that question. Justice Judge McNamee said I didn't have standing. And I disagreed with him. And I said that I had standing, number one, because when the complaint was filed, there was a pending case that the same attorney that had proceeded against me had on his desk and could have proceeded with. The case was dismissed. And it was kind of interesting that I would have filed the case, and then all of a sudden, the case is dismissed. Well, I wonder what that was all about, because in the meantime, the attorney that had investigated and charged me and sought my disbarment was commencing an investigation under the second complaint. So there was an ongoing complaint at the time I filed my case. My action, the complaint was identified in the amended action. And so under the standing argument at that time, I certainly had standing to raise the constitutionality questions of the Bar Association. But Mr. Yougster, you're an experienced lawyer. You know that things are dismissed all the time that do away with somebody having standing or a mootness issue. I mean, it can happen. It does happen all the time. Yesterday, we had three cases, two of which involved that very concept. It happens all the time. And so here, taking at face value what you said, when you filed a complaint, they had a complaint against you. You had particularized injury. And so, well, that went away. It didn't go away, Your Honor, because I think then you have to apply the rule of, can the Bar Association, by dismissing this complaint, create a mootness issue? And I submit to you in my briefing that it cannot, because it's going to do the same thing again. So the first point is, yes, I did have standing at the time I filed the action. Secondly, the Bar Association can't do away with that standing by making it moot. And the third point is, under Miller versus Washington, what the Bar Association did then when it dismissed the complaint was to essentially admonish me, but not give me the opportunity to question that admonishment. Now, that admonishment is going to remain in my file for five years. I might want to go back to Minnesota and practice law in Minnesota, but it's certainly going to show up on my application. But you haven't decided to do that. No, I'm going to stay here. Yeah, that's understandable. That's perfectly understandable. I feel at home here now after being here since 1966. And you've got a lot of friends at the state bar. Yes, I do, as a matter of fact. There are no hard feelings. But something else I'd like, I got just a few moments here. I've watched some of my friends go through this process. There is absolutely no way on this green earth of ours that we can get a federal court to look at the constitutionality of the Washington state disciplinary process. The process is replete with violations of substantive procedural due process. It's so replete that during the time of my not so enjoyable, but certainly extensionally beneficial experience with the Bar Association, the chief hearing officer was the law firm of the president of the Bar Association. And the person that the law firm then selected was a man by the name of Danielson, who was being paid by the Bar Association and who was making decisions in my case. Now, I'm not a totally ethical person in the world, I suppose. But that certainly only troubled my ethical sense. You're troubled by that pesky case and controversy requirement of the Constitution. Yeah. Darn thing. Well, it does sometimes seem to be somewhat inequitable the way we have interpreted it. But I think we're bound by some of our cases. And I think I've argued, I've given you reasons why you can go with me. And I think I have given you reasons why you can be the first real court in this country that actually takes a look at the Bar disciplinary process and makes it an independent process like it is, for example, in California. I've never talked to a California lawyer who had questions about the process in California. They feel comfortable with it. They feel it's a decent system. And I'm not saying that's the only system. I can assure you there are many who have felt the same way you do. There are 33,000 lawyers in the state of Washington. It's not like the 11,000 that there were when Justice Douglas swore me into the Bar. Can I reserve my 53 seconds? Actually, you're upside down. You're in the red. Oh. I'm sorry. We'll pretend to have. You're like the federal government. Oh, no, don't get me going on that one. Thank you, Your Honor. I appreciate it. OK. Good morning, Your Honors. My name is Bill Clark. I'm an Assistant Attorney General with the state of Washington. And I'm representing the nine individual justices of our state Supreme Court who are defendants in this case. Neither the state of Washington nor the court as an institution has ever been a party to the case. Well, may I just ask you one question out of curiosity? Opposing counsel said there's no way a federal court could ever review the procedures followed by the state of Washington. Is that correct? Or how could a federal court review the Bar Association procedures? To get over the 11th Amendment prohibition against suits against the state and state officials in their official capacity. And without considering the personal immunity of the justices as judges or as legislators of the rules governing attorney conduct, it is very difficult. Basically, what Mr. Euster or another attorney would have to do is to proceed under the ex parte young exception to the 11th Amendment and argue that prospectively and seek only prospective relief, the system will operate in a non-constitutional manner or is unconstitutional on its face in some way, shape, or form. Mr. Euster would require an awful lot of more ammunition for his case, including ammunition for an argument that such a case would be justiciable than he has in his quiver today. It is possible, but only as this lawyer sees it and off the top of my head in response to your question this morning, only under an ex parte young exception to the 11th Amendment. Well, ex parte young is used all the time. It's just a technicality, as they call it. It's a way to get around the 11th Amendment. So you pretend you're suing the people as individuals. I mean, I don't know why we just don't follow the text of the 11th Amendment. But in any event, that's not so hard to do, to bring an ex parte young case. Well, then Mr. Euster does have an avenue. It's not completely foreclosed. But when would he do that? When would he do that? He would not be able to do it in the face of ongoing and existing proceedings. So here we don't have any. Excuse me? Here we don't have any. Here we have no basis for him to proceed, because nothing has happened to him. Well, you just said he can't do it in the face of ongoing proceedings. Now you say that he can't do it because there are no ongoing. He can't use ex parte young, Your Honor, to upset ongoing proceedings that are existing. No, no, he's not trying to upset ongoing proceedings. He's saying? He wants to say, I want to test the state bar system. I don't have any, nothing going on. I'm a lawyer. I want to test the state bar proceedings. He needs to pursue under ex parte young. And as far as my defendants are concerned, he has to sue the justices in the official process. When does he do that? He can't do it. You say he can't do it now because there's nothing going on. He can't do it when something is filed against him, because then there are ongoing proceedings. So how does he ever get, the question is, how does he ever get to challenge? He has to fulfill the standing doctrine and show that there is something out there that threatens to cause him an actual injury in fact, not a speculative or hypothetical one. I don't know what you, so he has to be actually disciplined? No. And he challenges the? No, he doesn't have to be disciplined, Your Honor, but he has to assert a cause of action that demonstrates through some showing, allegations, facts, whatever, that he is under some sort of imminent threat of prosecution or harm to a constitutionally protected interest. He also has to sue the appropriate defendants. In this case, he sued my clients. That's not very hard. I'm not asking about this case. I said he made a statement that he couldn't, there's no way to get into federal court. And he's wrong. He's wrong. Ex parte young is the way that he can do it. Well, no, that's not your? Appropriate case. Let me ask you this. Putting aside for a moment the standing and mootness issue, Supreme Court of the United States decided the Supreme Court of Virginia versus Consumers Union of the United States. Under that case, is it not correct that the justices of the Washington Supreme Court are not entitled to either legislative immunity or absolute immunity? It is not correct, Your Honor, because Virginia Consumers Union is factually and legally distinct from the case before this court. In what way? The state of Virginia. Before we get to the facts of this case, let's just take it in the abstract. That case makes clear, does it not, that ex parte young has nothing to do with a case like that. Because you're suing these individuals, not the state, right? Actually, they were suing the justices in their official capacity. And that's the only way they were able to keep the chief justice in. My clients are being sued in their individual capacity. They can't be kept in under Virginia Consumers Union under that ground alone. So he would have to, again, if you're just starting from scratch, he would have to have a complaint that sued them in their official capacity as justices of the Washington Supreme Court. Is that correct? And he would have to show in that case that they are doing something that aggrieves him, that is not adjudicatory, is not judicial in nature, and is not legislative in nature. And that is a factual and legal impossibility for Mr. Eubster in Washington, because our system is materially different from that of the state of Virginia. In Virginia, the chief justice and any judge for court in Virginia could observe what he or she felt was sanctionable conduct and initiate a disciplinary proceeding in the courts of Virginia based on that observation. That cannot be done under Washington law. And it is not done in Washington. If a justice of the Supreme Court observes me behaving in a way that the justice feels is sanctionable, I get reported to the bar section, bar association, to Ms. Turner's client. And they decide the investigation. They decide whether or not to bring charges. And in the first instance, the prosecution of that charge occurs within the system that state law has set up, which is the bar association. The judges have no enforcement, no independent enforcement authority in Washington as they had in Virginia in the Consumer Union case. So that case has nothing to do with the state of Washington and its judges. If you're co-counsel planning on arguing also? Yes, I wanted to say that I was going to take up to seven minutes. Please cut me off, allow the bar association to have a few minutes of time. Okay, thank you, counsel. Continuing with my argument. No, no, you've taken, you've only got three minutes for your co-counsel. Well, it's just as important to answer Your Honor's questions as it is. Well, maybe not to your co-counsel. Perhaps not. Perhaps not, Your Honor. He has a firearm on the table there. Your Honor, I've asked to hand up to the court a handout that is simply four rules of our enforcement of lawyer's conduct that are referred to in the briefing but have not been submitted before. And they will demonstrate on the justiciability side, which I think my co-counsel will argue more extensively. She has any time, not more extensively, less extensively. I'm doing the best I can. These four ELCs, as we call them, are a demonstration that as a matter of law, this letter that Mr. Euster got a copy of that said the complaint's dismissed and there's no finding of misconduct, no reason to impose discipline, but we're gonna keep it on file for five years. He claims that as a matter of fact and as a matter of law, constituted a sanction of admonition. And it can't be under the ELCs that we provided to you for your consideration on a justiciability issue. The only statute or rule that Mr. Euster claims is being applied unconstitutionally here to him or could be applied unconstitutionally to him is ELC 3.6, which is about maintenance of the state bar records. It is not a sanction, a section, doesn't contemplate sanctions, and it does provide for a procedure whereby if Mr. Euster wants his file eradicated after three years and the bar opposes it, that matter is adjudicated at the bar level by the bar disciplinary board. So he does have an avenue here. This is not a threat in this letter to sanction him. This is an indication that the bar will take a position if he requests that the key that dismiss a letter be removed from his file that they'll argue about further downstream. It is not a decision on whether or not that letter stays on file. My clients are here in their individual capacity. They are legislatively immune as far as the passage or enactment of these ELCs. I think you've made that. If you want to look, give your co-counsel at least a minute. There's not a minute left already. I'm sorry, Your Honors, I will sit. Thank you. All right, your co-counsel has kindly left you 51 seconds. Yes, he has. We'll give you a full minute. Oh, thank you. You're welcome. I appreciate that. I mean, you know, you're dealing with your state's Supreme Court justices. Yes, I know. It's hard to overrule them. Elizabeth Turner, Your Honor, I'm Assistant General Counsel for the Washington State Bar. Bob Weldon retired after 30 years, so now you're stuck with me. I do have- Not for very long. I hope to be here for a while unless you know something I don't. I mean, in this court. Not in this court, that's true. I do just have a few points. Mr. Clark did an admirable job of trying to cover everything. He was correct when he brought up our Rule for Enforcement of Lawyer Conduct, ELC 3.3, or 3.6, rather. 3.6b does provide a procedure where Mr. Euster could, in fact, challenge the keeping of this letter, which he is so concerned about, which is not in the record, by the way, and which is not a public document. It's something that we would not be producing unless we were under a court order to do so. It's not public record. The letter. Correct. Correct. When grievances are dismissed, the files and all the documents related to those are confidential under the Rules for Enforcement of Lawyer Conduct. Of course, Mr. Euster or the grievant could do whatever they wanted to with it, but we as the bar could not. And that is my 55 seconds. Thank you very much. Well done, well done. You're very welcome. Your co-counsel probably owes you a nice dinner. I think I'm gonna take a look at that. Looks like you have one minute left. I think I have less than that. I know of no way, unless the stars are perfectly correct and the lawyer, subject to discipline, has put himself in touch with someone like myself or someone who knows as much as I know. If, for example, a lawyer, a grievance is filed and you get a call from the lawyer, gets a call from the disciplinary counsel that he's passing that on to the review board, a case has commenced within the Bar Association and under the younger case, there's an abstention. You can't go forward with a federal court case. So how could you go forward with a, how would you obtain a federal determination as to whether or not the whole system violates procedural due process? You couldn't. I suppose I could, were I to lie, say I am going to do something which is clearly in violation of the rules of professional conduct, like I could say, you know, I've got $150,000 in my trust account and I'm going to take 100 of that and loan it to myself and go to Mexico for a couple of weeks. I'm not going to do that. I am not going to tell a lie. I am not going to say I'm going to violate the rule. You may not be the man to test the state bar procedures in the federal court. Oh, but I'm just the perfect one to do it because I have experience. But your problem is with the United States Constitution, isn't it? I don't think so, Your Honor. Maybe with the way we've interpreted it. Yeah, I think that. I think that we all have to, despite the originalist intent, we have to apply our good sense to things. Thank you, Your Honor. I gave you my two bits, too. Thank you. Thank you. Case just argued will be submitted. The next case on the calendar is Toftswood versus Collingwood.
judges: Schroeder, Reinhardt, Smith